505 P.2d 1314 (1973)
COMMUNITY MANAGEMENT ASSOCIATION OF COLORADO SPRINGS, INC., a Colorado corporation, Plaintiff-Appellee,
v.
Richard D. TOUSLEY and Marilyn Tousley, Defendants and Third-Party Plaintiffs-Appellants,
v.
FORD MOTOR CREDIT COMPANY, a Delaware corporation, and Phil Long Ford, Inc., Third-Party Defendants-Appellees.
No. 72-089.
Colorado Court of Appeals, Div. I.
January 23, 1973.
*1315 William L. Carew, Colorado Springs, for defendants and third-party plaintiffs-appellants.
Grant, Shafroth, Toll & McHendrie, Ronald C. Butz, Denver, for third-party defendant-appellee Ford Motor Credit Co.
Selected for Official Publication.
DWYER, Judge.
The appellants Richard D. Tousley and Marilyn Tousley were defendants and third-party plaintiffs in the trial court and will be referred to as the debtors. Appellee Phil Long Ford, Inc., was a third-party defendant in the trial court and will be referred to as the dealer. Appellee Ford Motor Credit Company was a third-party defendant in the trial court and will be referred to as the credit company or as FMCC. Community Management Association of Colorado Springs, Inc., was the plaintiff in the trial court and will be referred to as the collection agency.
The debtors purchased an automobile from the dealer and made a down payment. They entered into a written contract to pay the unpaid balance of the purchase price in monthly installments. The contract was assigned by the dealer to the credit company under an agreement that the dealer would repurchase the contract in the event the debtors defaulted. The debtors failed to make the payments as required by the contract, and the automobile was repossessed by the credit company. The dealer repurchased the installment contract, took possession of the collateral, and sold the same without notifying the debtors of the intended sale. The proceeds of the sale did not fully satisfy the unpaid indebtedness, and the dealer's claim to this deficiency was assigned to the collection agency.
This action was commenced by the collection agency to recover the alleged deficiency from the debtors. In defense of this claim, the debtors asserted that the dealer's failure to give notice of sale of the repossessed automobile as required by C.R.S.1963, XXX-X-XXX(3), prevented recovery for any alleged deficiency. In a third-party complaint against both the dealer and FMCC, the debtors alleged that they were entitled to recover damages provided by the Uniform Commercial Code when a secured party fails to comply with the default procedures of the Code. The trial court ruled that the notice provisions of the U.C.C. did not apply to the sale of repossessed automobiles. The court entered a deficiency judgment against the debtors and dismissed their claims against the dealer and the credit company.
The issue of whether the debtors were entitled to notice of sale of the repossessed automobile is involved in all of the claims asserted in this action. The Uniform Commercial Code provision, C.R.S.1963, XXX-X-XXX(3), provides that reasonable notification of sale must be made unless the collateral is either (1) perishable; (2) threatens to decline speedily in value; or (3) is of a type customarily sold on a recognized market. Whether the debtors were entitled to notice of sale depends on whether the collateral is of a type customarily sold on a recognized market.
Repossessed automobiles are not collateral of a type sold on a recognized market within the meaning of C.R.S.1963, XXX-X-XXX(3). Nelson v. Monarch Investment *1316 Plan of Henderson, Inc., 452 S.W.2d 375 (Ky.Ct.App.); Alliance Discount Corp. v. Shaw, 195 Pa.Super. 601, 171 A.2d 548; Norton v. National Bank of Commerce, 240 Ark. 143, 398 S.W.2d 538. In the Alliance case, in reference to the automobile market, the court observed:
". . . No other article of commerce is subject to more erratic vacillation in pricing procedures. The so-called `red book' purporting to fix prices of various makes and models of automobiles in accordance with their year of manufacture is adopted for the convenience and benefit of dealers and is not based on market prices which are arrived at in the open, based on asking prices of sellers and bids of prospective buyers."
The reason for exempting from the notice requirement a transaction where there is a recognized market is that the price on the recognized market represents the fair market value from day to day. If there is a recognized market, theoretically, the best price at any given time is the current market price. Nelson v. Monarch Investment Plan of Henderson, Inc., supra. The court in the Norton case, in holding that a used automobile is not collateral of a type customarily sold on a recognized market stated that:
". . . `[A] recognized market' might well be a stock market or a commodity market, where sales involve many items so similar that individual differences are nonexistent or immaterial, where haggling and competitive bidding are not primary factors in each sale, and where the prices paid in actual sales of comparable property are currently available by quotation."
Since there is no recognized market for the sale of repossessed automobiles, the debtors were entitled to notice of sale of the repossessed automobile.
The second question presented by this appeal is whether the collection agency, as assignee of the secured party, may recover a deficiency judgment after a sale of repossessed collateral where the secured party failed to give notice of sale of the repossessed automobile to the debtors.
This question is one of first impression in Colorado. The decisions of appellate courts in other states are in conflict. One line of authority holds that the failure of the secured party to comply with the notice of sale requirements of section 9-504(3) bars the secured party from recovery of a deficiency judgment. See e. g., Atlas Thrift Co. v. Horan, 27 Cal.App.3d 999, 104 Cal.Rptr. 315; Braswell v. American National Bank, 117 Ga.App. 699, 161 S.E.2d 420; Leasco Data Process Equipment Corp. v. Atlas Shirt Co., 66 Misc.2d 1089, 323 N.Y.S.2d 13; Foundation Discounts, Inc., v. Serna, 81 N.M. 474, 468 P.2d 875; Skeels v. Universal CIT Credit Corp., D.C., 222 F.Supp. 696, vacated on other grounds, 3 Cir., 335 F.2d 846.
Other courts hold that the secured party's failure to give notice of sale of repossessed collateral does not result in a forfeiture of the right to recover a deficiency judgment. See, e. g., Grant County Tractor Co., Inc., v. Nuss, 6 Wash.App. 866, 496 P.2d 966; Universal CIT Credit Co. v. Rone, 248 Ark. 665, 453 S.W.2d 37; T & W Ice Cream, Inc., v. Carriage Barn, Inc., 107 N.J.Super. 328, 258 A.2d 162; Weaver v. O'Meara Motor Co., 452 P.2d 87 (Alaska); Conti Causeway Ford v. Jarossy, 114 N.J.Super. 382, 276 A.2d 402.
We adopt the reasoning of the second line of authority. The right of a secured party to a deficiency judgment is established by C.R.S.1963, XXX-X-XXX(2). The failure of the secured party to give reasonable notice of sale does not result in a forfeiture of the right to recover a deficiency judgment.
In an action to recover a deficiency judgment, the burden is upon the secured party to prove the amount of the deficiency. Whenever the value of the collateral is at issue, there is a presumption that the value of the repossessed collateral had the value of the outstanding debt. T & W Ice Cream, Inc., v. Carriage Barn, Inc., supra; Universal CIT Credit *1317 Co. v. Rone, supra. Where the sale is conducted in accordance with the requirements of the Code, the amount received at the sale of collateral is evidence of the market value. However, where the sale is not conducted in compliance with the law, the amount received is not evidence of the market value of the collateral. The secured party has the burden of proving the market value by other evidence. Universal CIT Credit Co. v. Rone, supra. The amount of the deficiency judgment was computed by accepting the amount received at the sale as the market value of the collateral. This was improper since the sale was not conducted in accordance with the Code. On retrial, the collection agency must establish the amount of the deficiency, if any, by proving that the actual market value of the collateral taken was less than the indebtedness.
The third question presented is what remedies are available to the debtors against the dealer. C.R.S.1963, XXX-X-XXX (1), provides:
"If it is established that the secured party is not proceeding in accordance with the provisions of sections 155-9-501 through XXX-X-XXX, disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred, the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of said sections. If the collateral is consumer goods, the debtor has the right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price."
This section establishes the right of a debtor to recover from the secured party any loss sustained where a secured party fails to give notice of sale to the debtor as required by C.R.S.1963, XXX-X-XXX(3). See Grant Tractor Co., Inc., v. Nuss, supra; Leasco Data Process Equipment Corp. v. Atlas Shirt Co., supra. The Code provides that if the collateral is consumer goods the minimum recovery by the debtors would be the time price differential plus ten per cent of the cash price. See Atlas Credit Corp. v. Dolbow, 193 Pa.Super. 649, 165 A.2d 704. Accordingly, since the dealer did not give notice of the sale, it is liable to the debtors for damages as provided in the Code.
The next question concerns the liability of the credit company, FMCC. After the default by the debtors and repossession of the automobile by the credit company pursuant to the assignment and repurchase agreement between the dealer and FMCC, the automobile was returned to the dealer. The dealer then paid to the credit company the amount due on the reassigned retail installment contract. The transfer of the repossessed collateral by the credit company to the dealer was not a sale or other disposition within the contemplation of the Code. C.R.S.1963, XXX-X-XXX(5). See Rangel v. Bock Motor Co., 437 S.W.2d 329 (Tex.Civ.App.); Jefferson Credit Corporation v. Marcano, 60 Misc.2d 138, 302 N.Y.S.2d 390. It was the dealer's responsibility to comply with the notice provisions of the Code in conducting the subsequent sale of the automobile. The credit company was not a party to that sale and incurred no obligation to the debtors because of the manner in which the dealer conducted the sale. See Rangel v. Bock Motor Co., supra.
The debtors further contend that the statutory penalty under C.R.S.1963, XXX-X-XXX(1), should apply to both FMCC and the dealer because the repossession of the collateral without prior notice and hearing was in violation of the debtors rights of due process under the law. The debtors also contend that the clause of the retail installment contract providing for repossession without notice and a hearing is unconscionable under the provisions of C.R.S.1963, XXX-X-XXX. Since these contentions were not raised in the trial court, it is *1318 not necessary to consider them on this appeal. Western Oil Fields v. Coit, 29 Colo. App. 567, 487 P.2d 562; Aronoff v. Western Federal Savings and Loan Assn., 28 Colo.App. 151, 470 P.2d 889.
The judgment in favor of Ford Motor Credit Company is affirmed. The judgment in favor of Community Management Association of Colorado Springs, Inc., is reversed, and the judgment dismissing the claim of Richard Tousley and Marilyn Tousley against Phil Long Ford, Inc., is reversed. The cause is remanded for a new trial.
COYTE and ENOCH, JJ., concur.