**1ST CHARTER LEASE COMPANY, a Colorado corporation, Plaintiff-Appellant,**

**v.**

**McAL, INC., a Colorado corporation, d/b/a Mc A.L., Inc., John E. McNabb, Audry Lee Autry, and Lon Dale Lowry, Defendants-Appellees.**

**No. 81CA0785.**

Colorado Court of Appeals,
Div. I.

Feb. 12, 1984.

David Barsotti, Denver, for plaintiff-appellant.

Ware, Marroney & Cole, P.C., David E. Ware, Pueblo, for defendants-appellees McAl, Inc., Audry Lee Autry, and Lon Dale Lowry.

No appearance for defendant-appellant John E. McNabb.

PIERCE, Judge.

In this action for a deficiency judgment, plaintiff, 1st Charter Lease Company (1st Charter) appeals the trial court's dismissal of claims on a motion for a directed verdict made by defendants, McAl, Inc., John E. McNabb, Audry Lee Autry, and Lon Dale Lowry (McAl). We reverse.

1st Charter is a general equipment leasing company. McAl leased computer hardware from 1st Charter for a term of 60 months with monthly payments of $560.25, for a total of $33,615. There is no dispute that the transaction involved a security interest governed by Article 9 of the Uniform Commercial Code, § 4–9–101, et seq., C.R.S. *Lease Finance, Inc. v. Burger*, 40 Colo.App. 107, 575 P.2d 857 (1977).

Approximately one year after the execution of the lease, McAl defaulted and 1st Charter made formal demand for payment and return of the equipment. After a preliminary attempt at sale by McAl, possession of the equipment was returned to 1st Charter. 1st Charter then sought to sell the equipment by advertising in a local trade journal, by word of mouth communications, and by written invitations to bid to various computer retailers. Subsequently, the equipment was sold at private auction for $6,974 with costs of $87.62. After applying this amount to McAl's outstanding balance of $23,207.68, 1st Charter initiated this action for a resulting deficiency of $16,233.68.

By its own admission, 1st Charter did not provide McAl with written notice of the date after which the equipment would be sold.

At the conclusion of 1st Charter's case, McAl moved for a directed verdict which was granted by the trial court. The trial court found that because 1st Charter had failed to give notice of the private sale, and because the sale had not been conducted in a commercially reasonable manner, 1st Charter could not claim a deficiency. A judgment of dismissal against 1st Charter then entered.

1st Charter argues on appeal that the trial court's ruling was incorrect as a matter of law. We agree.

Section 4–9–504(3), C.R.S., governs disposition of the collateral after McAl's default. In pertinent part, it provides:

"Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made, shall be sent by the secured party to the debtor ...."

A "recognized market" has been described as one where sales involved many items so similar that individual differences are non-existent or immaterial, where haggling and competitive bidding are not primary factors in each sale, and where prices paid in actual sales of comparable property are currently available by quotation. *See Community Management Ass'n v. Tousley*, 32 Colo.App. 33, 505 P.2d 1314 (1973). In *Tousley*, this court ruled that automobiles are not collateral of the type sold on a recognized market within the meaning of § 4–9–504(3), C.R.S. We believe a similar analysis is applicable to computer hardware.

■ Failure to give notice of the disposition of collateral does not, however, in and of itself, preclude a secured party from recovering a deficiency if it can establish the amount of the deficiency sought. *First National Bank v. Cillessen*, 622 P.2d 598 (Colo.App.1980).

■ If notice of a private sale does not comply with statutory requirements, a rebuttable presumption arises that the value of the repossessed collateral is at least equal to the amount of the outstanding debt, and therefore, that no deficiency exists. However, this presumption may be overcome by presenting evidence other than the sum received from the sale of the repossessed collateral. *United Bank v. Reed*, 635 P.2d 922 (Colo.App.1981); *First National Bank v. Cillessen, supra.*

■ In order to determine whether 1st Charter has demonstrated its entitlement to a deficiency judgment, we must refer to CRE 301 which states as follows:

"In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes upon the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast."

Hence, because no special statute controls here, the presumption that the value of the collateral exceeds the outstanding debt places the burden of producing evidence on its opponent, here 1st Charter. 1st Charter presented the testimony of an expert who stated that the value of the collateral at the time and place of the sale, if purchased used, as was done here, would be between $6,000 and $6,500. This testimony met the presumption. It thus became incumbent on McAl to go forward with evidence that the value of the collateral was equal to or more than the amount of the outstanding debt.

After hearing all of the evidence, it would then be the trial court's duty to determine whether McAl had met its burden of persuasion on this issue, without reference to the presumption. *See City & County of Denver v. Delong*, 190 Colo. 219, 545 P.2d 154 (1976). It could then deal with the issue as to whether the sale was commercially reasonable. Thus, McAl was not entitled to a dismissal at the close of 1st Charter's case.

The judgment is reversed and the cause is remanded for a new trial.

BERMAN and METZGER, JJ., concur.