**COLORADO LEASING CORPORATION, a Colorado corporation, Plaintiff-Appellee,**

v.

**James M. BORQUEZ and Conrad Borquez, Defendants-Appellants.**

**No. 85CA0859.**

Colorado Court of Appeals, Div. I.

Dec. 24, 1986.

Rehearing Denied Feb. 12, 1987.

Certiorari Denied (Colorado Leasing) June 15, 1987.

---

Fuller and Evans, Larry G. Johnson, Denver, for plaintiff-appellee.

James R. Horton, Denver, for defendants-appellants.

CRISWELL, Judge.

Defendants, James and Conrad Borquez, appeal from a judgment against them as guarantors of an equipment lease. They claim the trial court erred in holding that the lease was not a security agreement under the Uniform Commercial Code § 4–1–101, et seq., C.R.S. (U.C.C.), to which the notice of sale provisions of § 4–9–504(3), C.R.S. (1986 Cum.Supp.), applied. We agree and reverse.

Defendants, who were officers of a corporation, personally guaranteed the corporation's obligations under an equipment lease with plaintiff, Colorado Leasing Corporation, for mobile telephone equipment. When the corporate lessee defaulted on the lease payments and initiated bankruptcy proceedings, plaintiff filed suit against de-

fendants under their guarantee. While suit was pending, plaintiff took possession of the equipment and sold it at private sale for $500.

After a bench trial, the court determined that the written lease was not a security agreement, so that the U.C.C.'s notice requirements were inapplicable. Without making any finding as to the equipment's fair market value as of the date of its sale, the trial court entered judgment against defendants in the amount of $17,424.96, representing unpaid rental payments, interest, attorney's fees, and costs, less the $500 sale proceeds.

## I. Security Agreement

We agree with defendants that the trial court erred in determining that the lease provisions did not create a security interest under the U.C.C.

Any transaction intended to create a security interest is subject to Article 9 of the U.C.C. *Lease Finance, Inc. v. Burger*, 40 Colo.App. 107, 575 P.2d 857 (1977); § 4–9–102, C.R.S. (1986 Cum.Supp.). The characterization of a transaction as a lease or a sale does not determine whether it creates a security interest; rather, the mutual intent of the parties, as determined by the facts of each case, is controlling. *Lease Finance, supra; H.M.O. Systems, Inc. v. Choicecare Health Services, Inc.*, 665 P.2d 635 (Colo.App.1983).

In both *Lease Finance* and *H.M.O. Systems*, we listed seven factors which should be used to determine whether a purported lease of personal property actually creates a security interest. Each of those factors appears here from the face of the parties' agreement itself, and the record contains no other evidence which would support an inference that the parties did not intend to create a security interest in the equipment. We conclude, therefore, as a matter of law, that this "lease" agreement was in reality a contract of sale and created a security interest in the equipment.

## II. U.C.C. Notice to Defendants

Since the lease agreement did create a security interest, plaintiff's sale of the equipment after its repossession was subject to § 4–9–504(3), C.R.S. This section authorizes either public or private sale of repossessed collateral but requires the secured party to send the debtor notice of the time and place of any public sale or "the time after which any private sale ... is to be made."

Such notice allows any persons interested in the collateral or facing a possible deficiency claim an opportunity to protect their interests and to reduce their potential liability, either by paying the debt prior to sale, and thereby redeeming the property, or by seeking out potential purchasers to assure that the sales price does not fall below its fair market value. As parties liable for any deficiency under the lease, defendants were entitled to statutory notice. *First National Bank v. Cillessen*, 622 P.2d 598 (Colo.App.1980).

In this case, while plaintiff orally advised defendants, some time after the repossession, that it intended to sell the equipment, defendants were not notified whether the intended sale was to be public or private, nor were they advised of the date on which or after which such sale was to be made. Absent notification of these facts, a mere declaration of an intent to sell at some time in the indefinite future does not comply with the U.C.C.'s mandate. Thus, defendants were not provided the requisite notice.

We recognize that some question may exist as to whether the required notice may be orally given or must be in written form. *See* 9 R. Anderson, *Uniform Commercial Code* § 9–504:47 (3rd ed. 1985); and J. White & R. Summers, *Uniform Commercial Code* § 26–10 at 1112 (1980). However, in light of our conclusion that the notice provided by plaintiff here was insufficient, we do not address that issue.

## III. Evidence of Fair Market Value

If a secured party fails to give proper notice under § 4–9–504(3), a presumption arises that the value of the collateral at the

time of its sale was equal to the amount of the outstanding debt, so that no deficiency results. While such presumption is rebuttable, if no proper notice is given, the secured party must establish the fair market value of the property through use of evidence other than the price received at the time of the sale. *First National Bank v. Cillessen, supra; Community Management Ass'n v. Tousley,* 32 Colo.App. 33, 505 P.2d 1314 (1973).

In this case, plaintiff failed to submit any evidence to establish the property's fair market value, other than evidence of the price received at the private sale. While there was some testimony which attempted to explain why the sales price was so low, no specific evidence of the property's fair market value was presented. Absent such evidence, there was no basis for the entry of a deficiency judgment.

 Where a trial court's ruling has prohibited a party from introducing evidence of the proper measure of damages, or where a party fails to produce evidence in reliance upon a trial court's pretrial ruling, such party may be excused from presenting such evidence. Under such circumstances, if the trial court's ruling is determined to be in error, justice may require that the matter be remanded for a new trial. *See Zwick v. Simpson,* 193 Colo. 36, 572 P.2d 133 (1977); *American Factors Associates, Ltd. v. Triangle Heating & Sheet Metal Co.,* 31 Colo.App. 240, 503 P.2d 163 (1972).

In this case, however, the trial court made no ruling upon the applicability of the U.C.C. until the parties had presented all of their evidence. Moreover, plaintiff's own pretrial certificate indicated that it was aware that the applicability of Article 9 of the U.C.C. was an issue to be resolved at the time of the trial. By failing to present evidence of fair market value, plaintiff chose to rely solely upon its assertion that the provisions of the U.C.C. were inapplicable to this transaction. Having made such a conscious decision, there exists no equitable reason to provide to plaintiff a second opportunity to present fair market val-

ue evidence. *See Hoover v. Shott,* 68 Colo. 385, 189 P. 848 (1920).

The judgment is reversed and the cause is remanded with directions to dismiss plaintiff's complaint with prejudice.

PIERCE and TURSI, JJ., concur.