**In re Willie Junior REED, SSN 440–44–0520, Ruth Ann Reed, SSN 443–48–7582, Debtors.**

**Bankruptcy No. 87–01242.**

United States Bankruptcy Court, E.D. Oklahoma.

April 24, 1989.

Thomas Marsh, Tulsa, Okl., for FMCC.

William E. Rutledge, Tulsa, Okl., trustee.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

On February 10, 1989, this Court conducted a hearing on the Motion for Contempt and for Sanctions and Award of Damages and Costs filed by the Chapter 7 Trustee with an accompanying Response by Ford Motor Credit Company.

Appearances were entered at the hearing by Thomas Marsh for Ford Motor Credit Company (FMCC) and by William E. Rutledge, the duly appointed Chapter 7 Trustee in this case (Trustee).

At the conclusion of the taking of evidence at the hearing, the parties were afforded the opportunity to submit legal Briefs in support of their respective positions. Said Briefs were timely received in this Court to be considered in the formulation of this Order.

After review of the Briefs, the evidence presented at the hearing, and the applicable law in the area, this Court does hereby enter in this final Order the following Findings of Fact in this core proceeding:

## STATEMENT OF ISSUE

At issue in this case is whether FMCC violated the automatic stay in the repossession and sale of a vehicle owned by the Debtors and encumbered by a lien held by FMCC. In addition, if a violation is found, whether damages should be awarded the Trustee for said violation in accordance with 11 U.S.C. § 362(h) and, if so, the amount of such an award.

1. On October 27, 1987, the Debtors filed a Petition seeking relief under Chapter 7 of the United States Bankruptcy Code. At the time of this filing, the Debtors were in possession of a 1985 Ford Escort motor vehicle in which FMCC possessed a security interest. Therefore, the vehicle is property of this estate.

2. On October 30, 1987, FMCC took possession of the subject vehicle, without notifying the Trustee and without the Trustee having first abandoned said vehicle. FMCC claims that the taking of the vehicle was prompted by a request by the Debtors to pick up the vehicle. However, at the hearing, the testimony of Debtor Ruth Ann Reed contradicted this version of the facts. Mrs. Reed claims that the vehicle was not in working condition, and when FMCC telephoned, the Debtor stated their intention to return the car. Subsequently, FMCC took possession of the vehicle.

3. On November 24, 1987, FMCC sold the subject vehicle at a public auction, without giving prior notice to the Trustee in Bankruptcy.

4. FMCC had knowledge of the filing of the Petition in Bankruptcy at the time of the sale of the vehicle. This is evidenced by a collateral recovery document generated by FMCC (see Defendant's Exhibit No. 5 at portion labeled "reason for recovery") and by admission in the Agreed Pre–Trial Order filed February 9, 1989.

5. The subject vehicle was sold at auction by the Oklahoma Auto Auction for a gross wholesale price of 2,500.00, resulting in the following calculation of the Debtors' account as stipulated by the parties in the Pre–Trial Order:

| | |
|---|---|
| (a) Principal Debt | $6,853.38 |
| (b) Credit Service Charge | $1,904.46 |
| (c) Total Deficiency from Sale | $2,763.28 |

(See Agreed Pre–Trial Order filed February 9, 1989 at Page 2)

6. At no time prior to the sale of the subject vehicle did FMCC seek or obtain relief from the automatic stay from this Court.

7. The attorney for the Trustee submitted a breakdown of compensation requested for services performed in the pursuit of this action, setting forth nine hours at $125.00 per hour, for a total of $1,125.00. In addition, the Trustee asserts expenses for postage and copying in the amount of $17.20 (see Trustee's Exhibit No. 2).

## CONCLUSIONS OF LAW

A. Although the Trustee seeks to bring this action as one for contempt, this Court chooses to characterize the relief sought as being an action for damages specifically provided for in the Code pursuant to 11 U.S.C. § 362(h), which states:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

It is unclear whether the Bankruptcy Court is empowered to issue a contempt citation, but this Court finds it unnecessary to decide that issue at this time. Compare *Lindsey v. Ipock*, 732 F.2d 619 (8th Cir. 1984) and *In re Depew*, 51 B.R. 1010 (Bankr.E.D.Tenn.1985).

B. The elements of § 362(h) which the Trustee must prove for recovery are: (1) a violation of the stay by the secured creditor; (2) that said violation was willful; (3) that the Trustee was injured by the violation giving rise to actual and, if applicable, punitive damages; and (4) the measure and amount of the damages sustained.

C. *Violation of the stay:* It is clear from the facts that FMCC violated the automatic stay imposed by 11 U.S.C. § 362(a) in this case. However, this Court finds that the *operative act* giving rise to the violation *is the sale* of the subject vehicle and *not the repossession*, since the former is an irreversible act which deprives the estate of property on a permanent basis while the latter is an inconvenience for the Trustee, but not harmful to the debtor or the estate.

D. *Willfulness:* Circumstances which justify the finding by this Court of a "willful" violation of the stay include "any intentional and deliberate acts done with knowledge that the act is in violation of the automatic stay." *In re Davis*, 74 B.R. 406, 410 (Bankr.N.D. Ohio 1987). In addition, notice of the commencement or pendency of a bankruptcy case need not be formal in nature "where the creditor has sufficient facts which would cause a reasonably prudent person to make further inquiry." *In re Bragg*, 56 B.R. 46, 49 (Bankr.M.D.Ala. 1985).

In the instant case, FMCC admits knowledge of the pendency of the bankruptcy at the time of the sale (see Pre–Trial Order filed February 9, 1989 at Page 2 and Defendant's Exhibit No. 5). FMCC was put on sufficient notice by the Debtors when telephoning about the status of the car to make further inquiry. Thus, from the circumstances, we find that violation of the automatic stay by FMCC in the sale of the subject vehicle was indeed "willful."

E. *Injury giving rise to damages:* Protection of the overall bankruptcy process is a policy which must be maintained to give substance to the mandates of Congress. The automatic stay provision is a fundamental part of the rights afforded the debtor and commensurately, the Trustee in any bankruptcy proceeding, absent the granting of relief from the automatic stay. As such, we find that an injury is present upon the finding of a willful violation, giving rise to damages.

F. *Measure and amount of damages:* Both parties rely on Okla.Stat.Ann. tit. 12A, § 9–501, et seq. (West Supp.1989) governing the disposing of property upon default by a secured creditor and damages from violations occurring pursuant thereto in the calculation of damages awarded for the violation of the stay in this case. A secured creditor may dispose of collateral "by public or private proceedings and may be made by way of one or more contracts." Further, "unless collateral is perishable or threatens to decline speedily in value or is of the type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reason-

able notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor if he has not signed after default a statement renouncing or modifying his right to notification of sale." Okla.Stat.Ann.tit. 12A, § 9–504(3) (West Supp.1989). In the case of a bankruptcy, the Trustee must be notified of a pending sale of estate property.

The exception to notice for goods normally sold in a recognized market and perishable goods does not apply to the sale of automobiles. See *Community Management Association of Colorado Springs, Inc. v. Tousley,* 32 Colo.App. 33, 505 P.2d 1314 (1973). Therefore, FMCC was required to notice the Trustee before selling the subject vehicle in the case before this Court. Failure to give such notice renders the sale as not having been made in a "commercially reasonable manner."

■ G. Damages which may be awarded for failure to conduct a sale in a commercially reasonable manner are outlined in Okla.Stat.Ann.tit. 12A, § 9–507(1) (West Supp.1989) which states, in pertinent part:

> If the disposition has occurred, the debtor or any person entitled to notification, ... has a right to recover from the secured party any loss caused by failure to comply with the provisions of this part. If the collateral is consumer goods, the debtor has a right to recover, in any event, an amount not less than the credit service charge plus ten percent (10%) of the principal amount of the debt or the time price differential plus ten percent (10%) of the cash price.

Since the stipulated credit service charge is $1,904.66, the Trustee would be entitled to this amount plus $685.34 representing ten percent of the principal debt, for a total measure of damages of $2,590.00.

H. An actual award of damages pursuant to Okla.Stat.Ann.tit. 12A, § 9–507(1) (West Supp.1989) must be tempered against any deficiency judgment which the creditor may incur in the sale of the subject vehicle. The Court's own research, which was not provided by the parties, reveals that the Oklahoma Supreme Court has changed its original position that a sale must have been made in a commercially reasonable manner with proper notice before a deficiency may be charged against the damages awarded under § 9–507(1), [see *First National Bank & Trust Co. of Enid v. Holston,* 559 P.2d 440, 443 (Okla. 1977 and *Davidson v. First State Bank & Trust Co., Yale,* 559 P.2d 1228, 1232 (Okla. 1977) which was later reprinted and corrected at 609 P.2d 1259 (Okla.1977)] and now allows such a set-off against damages awarded under § 9–507(1). See *Beneficial Finance Co. v. Young,* 612 P.2d 1357 (Okla.1980) and *First State Bank of Oilton v. Perryman,* 746 P.2d 706, 707 (Okla.App. 1987). Also see *In re Buttram,* 2 B.R. 92, 97 (Bankr.N.D.Okla.1979) where Judge Rutledge applied § 9–507(1) to an act scenario similar to the case before this Court.

Normally in order for a secured party to obtain deficiency credit from a sale, it must show that the actual value of the collateral was less than the amount of the debt at the time of the sale. *Leasing Associates, Inc. v. Slaughter & Son, Inc.,* 450 F.2d 174 (8th Cir.1971). FMCC has proffered the value of and debt on the subject vehicle without rebuttal by the Trustee either at the hearing or in the Briefs. Since this is the case, we find that the creditor has sustained its burden in proving a deficiency.

In the instant case, since the creditor sustained a deficiency of $2,763.28, the resulting damages pursuant to § 9–507(1) amounting to $2,590.00, are totally set-off and thus not available for recovery to the Trustee.

■ I. The Oklahoma Supreme Court found that the intent of the Code in requiring noticing was to protect the debtor, and not punish the creditor. *Beneficial Finance Co. v. Young,* supra at 1359. Since this is the case, this Court can only attribute the damages outlined in that Section of the Uniform Commercial Code as actual damages and not punitive damages, absent malice, fraud, or oppression. *Beneficial Finance Co. v. Young,* supra at 1360. No evidence has been presented to this Court by the Trustee to demonstrate

malice, fraud or oppression to justify the imposition of punitive damages, either under § 9–507(1) *or* 11 U.S.C. § 362(h).

J. Clearly, the Trustee in this case is entitled to his attorney's fees separate and apart from the damages set forth in § 9–507(1) pursuant to 11 U.S.C. § 362(h). In addition, the Trustee has provided a breakdown of compensation in the amount of $1,125.00 for attorney's fees and $17.20 in reimbursement for expenses. FMCC was given the opportunity to comment on these fees, but chose not to do so. However, the expenses of $17.20 are noncompensable since we find that the term "costs" under § 362(h) encompasses actual Court costs (of which there are none in this case) and not the reimbursement of expenses.

K. The Court wishes to make it abundantly clear that future violations in this manner of the automatic stay by this creditor shall be looked upon with a much more severe eye. FMCC is forewarned to alter its repossession process in bankruptcy cases, unless it wishes to test this Court's patience and incur its wrath.

IT IS THEREFORE ORDERED that the Trustee be awarded attorney's fees in the amount of $1,125.00 in compensation for the willful violation of the automatic stay pursuant to 11 U.S.C. § 362(h).